United States District Court
Southern District of Texas
**ENTERED**
September 27, 2024
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION**

| | | |
|---|---|---|
| **ROSA MARIA ROSALES &** | § | |
| **GUADALUPE S. ESPARZA** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 6:21-CV-00058** |
| | § | |
| **UBER TECHNOLOGIES, INC.,** | § | |
| **RASIER, LLC & LYFT, INC.** | § | |
| | § | |
| **Defendants.** | § | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

This is a personal injury dispute resulting from a car accident in Victoria, Texas. In September 2019, Miguel Alejandro Resendiz rear-ended Plaintiffs Rosa Rosales and Guadalupe Esparza. Resendiz, a rideshare driver, was logged in to Defendants Uber and Lyft's apps when he hit Plaintiffs. Plaintiffs sued Uber and Lyft under various theories of direct and vicarious liability.

Before the Court are Defendants' Motions for Summary Judgment, (Dkt. Nos. 87, 108), and Plaintiffs' Motion for Partial Summary Judgment, (Dkt. No. 142). Uber and Lyft insist that Resendiz was an independent contractor and that, as a result, they are not liable for his conduct. Plaintiffs, meanwhile, seek summary judgment on Defendants' alternative defenses of comparative fault and unavoidable accident. As discussed below, the Court agrees that Defendants are not vicariously or directly liable for the accident as a matter of law. Accordingly, Defendants' Motions are **GRANTED** and Plaintiffs' Motion is **DENIED** as moot.

## I.  FACTS AND PROCEDURAL HISTORY

### A.  FACTS[1]

Roughly five years ago, Plaintiffs were driving together in Victoria, Texas.  (Dkt. No. 67 at 3).  At around 2:34 a.m., Resendiz rear-ended Plaintiffs while they were stopped at a red light.  (Dkt. No. 121 at 13).  Both Plaintiffs were injured.  (Dkt. No. 92 at 2).  At the time, Resendiz was a rideshare driver for Uber[2] and Lyft.  (Dkt. No. 67 at 4).  He was logged in to both Defendants' apps looking for passengers when he rear-ended Plaintiffs. (*Id.* at 4–5).

### B.  PROCEDURAL HISTORY

In July 2021, Plaintiffs sued Uber and Lyft, bringing various tort claims.  (*See id.* at 1–2, 4–25).  Both Defendants moved for summary judgment on all claims.  (Dkt. Nos. 87, 108).  Plaintiffs then moved for partial summary judgment on two of Defendants' defenses.  (Dkt. No. 142).

#### 1.  Plaintiffs' Claims

Plaintiffs' claims generally fit into three buckets: (1) vicarious liability; (2) direct liability; and (3) gross negligence.  (Dkt. No. 67 at 4–25).

---

[1]   Except where noted, this section contains only undisputed facts, and all facts and reasonable inferences have been construed in favor of the nonmovant.  *Renfroe v. Parker*, 974 F.3d 594, 599 (5th Cir. 2020).  The Court has not weighed evidence or made credibility findings.  *Id.*

[2]   The other listed Defendant in this case, Rasier, LLC, is a wholly owned subsidiary of Uber.  (Dkt. No. 87 at 10).  When the Court refers to Uber or Defendants, it includes Rasier, LLC.

Plaintiffs' vicarious-liability claims include (1) respondeat superior of an employee; (2) respondeat superior of a nonemployee; (3) borrowed employee; and (4) joint venture. (*See id.* at 4–11) (against Uber); (*see also id.* at 15–22) (against Lyft).[3]

As for direct liability, Plaintiffs claim that Defendants are liable for, among other things, "negligently contracting, qualifying, monitoring, retaining, managing, and supervising" Resendiz. (*Id.* at 11–15, 22–25). Plaintiffs also claim that Uber and Lyft directly contributed to the accident by creating a distracting driving environment. (*Id.* at 11–13, 22–23).

Finally, Plaintiffs claim that Defendants were grossly negligent because Defendants "had actual, subjective awareness of the risk involved but, nevertheless, proceeded with conscious indifference to the rights, safety, or welfare of the Plaintiffs, or others similarly situated." (*Id.* at 14–15, 24–25).

## 2.   Defendants' Motion for Summary Judgment

Defendants seek summary judgment on all claims. (Dkt. No. 87) (Uber); (Dkt. No. 108) (Lyft). First, as to Plaintiffs' vicarious-liability claims, Defendants argue that

---

[3]   Plaintiffs list six vicarious liability "claims" in the subheadings nested under the "Agency, Special Relationship, and Vicarious Liability" heading in Plaintiffs' First Amended Complaint. (Dkt No. 67 at 4–11, 15–22). The "claims" omitted from the list above are (1) "Scope of Employment" and (2) "Subterfuge or Modification of an Independent Contractor Written Agreement." (*Id.* at 6–7, 9–10, 17–18, 20–21). The first is omitted because it is an element of a respondeat superior claim. *Painter v. Amerimex Drilling I, Ltd.,* 561 S.W.3d 125, 138 (Tex. 2018). The second is omitted because (1) it is, if anything, a factual rebuttal to Resendiz's independent-contractor status and (2) Plaintiffs offer no evidence that the agreements between Defendants and Resendiz were a sham or the result of subterfuge. *See Farlow v. Harris Methodist Fort Worth Hosp.,* 284 S.W.3d 903, 911 (Tex. App.—Fort Worth 2009, pet. denied) ("A contract expressly providing that a person is an independent contractor is determinative of the relationship absent evidence that the contract is a *mere sham or subterfuge* . . . ." (emphasis added)).

Resendiz was an independent contractor when the accident happened.  (Dkt. No. 87 at 16–25) (Uber); (Dkt. No. 108 at 14–21) (Lyft).  As a result, Defendants argue that several (if not all) of Plaintiffs' vicarious-liability claims fail as a matter of law, (Dkt. No. 87 at 19–20) (Uber); (Dkt. No. 108 at 14) (Lyft), and that those left standing fail on their own terms, (Dkt. No. 87 at 25–31) (Uber); (Dkt. No. 108 at 21–25) (Lyft).

Second, as to Plaintiffs' direct-liability claims, Defendants argue that (1) Resendiz's independent-contractor status is fatal to most (if not all) of Plaintiffs' direct-liability claims; (2) Plaintiffs' evidence is insufficient as a matter of law to establish that Defendants were negligent in allowing Resendiz to become a driver; and (3) Defendants' services did not contribute to the accident.  (Dkt. No. 87 at 31–35) (Uber); (Dkt. No. 108 at 25–31) (Lyft).

Finally, as to Plaintiffs' gross-negligence claim, Defendants argue that (1) Defendants were not grossly negligent because they were not negligent; and (2) regardless, Plaintiffs cannot prove gross negligence.  (Dkt. No. 87 at 35–37) (Uber); (Dkt. No. 108 at 31–32) (Lyft).

### 3.   Plaintiffs' Motion for Partial Summary Judgment

Defendants also offer several alternative defenses.  (Dkt. No. 77 at 7–13) (Uber); (Dkt No. 79 at 12–15) (Lyft).  Plaintiffs seek summary judgment on two: (1) comparative fault; and (2) unavoidable accident.  (Dkt No. 142).  Because the Court agrees that Defendants are not vicariously or directly liable on any theory, the Court denies Plaintiffs' Motion for Partial Summary Judgment as moot.

## II.    LEGAL STANDARD

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it could affect the suit's outcome under governing law. *Renwick v. PNK Lake Charles, LLC*, 901 F.3d 605, 611 (5th Cir. 2018) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)). And "[a] dispute about a material fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *TIG Ins. v. Sedgwick James*, 276 F.3d 754, 759 (5th Cir. 2002) (quoting *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion" and identifying the record evidence that "it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). "If the moving party fails to meet [its] initial burden, the motion [for summary judgment] must be denied, regardless of the nonmovant's response." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam).

If the movant meets this burden, the nonmovant must come forward with specific facts showing a genuine issue for trial. Fed. R. Civ. P. 56(c); *see also Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). The nonmovant must "'go beyond the pleadings and by [the nonmovant's] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial.'" *Nola Spice Designs,*

*LLC v. Haydel Enters.*, 783 F.3d 527, 536 (5th Cir. 2015) (quoting *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553).   "The nonmovant must 'identify specific evidence in the record and . . . articulate the precise manner in which that evidence supports his or her claim.'" *Carr v. Air Line Pilots Ass'n, Int'l*, 866 F.3d 597, 601 (5th Cir. 2017) (per curiam) (quoting *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998)), *as revised* (July 14, 2017). If evidence is merely colorable or not significantly probative, summary judgment is appropriate.  *Parrish v. Premier Directional Drilling, L.P.*, 917 F.3d 369, 378 (5th Cir. 2019) (citing *Anderson*, 477 U.S. at 249–50, 106 S.Ct. at 2511).

In reviewing a motion for summary judgment, the district court views the evidence in the light most favorable to the nonmovant.  *Carr*, 866 F.3d at 601.  This means that courts must resolve factual controversies in the nonmovant's favor, "but only when . . . both parties have submitted evidence of contradictory facts." *Little*, 37 F.3d at 1075.

## III.   EVIDENTIARY ISSUES

Before addressing the Parties' claims, the Court first addresses the Parties' evidentiary objections.

### A.   PLAINTIFFS' EVIDENTIARY OBJECTIONS

Plaintiffs object to two documents from Uber and three documents from Lyft.

#### 1.   Objections Against Uber

Plaintiffs object to (1) Uber's technology services agreement, (Dkt. No. 86-2); and (2) Uber's timestamp log showing when Resendiz accepted this agreement, (Dkt. No. 86-8); (*see* Dkt. No. 113 at 1–4).

6

a.    Technology Services Agreement

Plaintiffs object to the admissibility of the technology services agreement under Rules 802, 901, and 1002 of the Federal Rules of Evidence.  (Dkt. No. 113 at 3).

Beyond referencing the rules, Plaintiffs do not explain how the technology services agreement is hearsay or violates the best-evidence rule.  (*See* Dkt. No. 113 at 1–4). Accordingly, the Court overrules these objections.  *See* Fed. R. Evid. 103(a)(1)(B); *see Michel v. Workrise Techs. Inc.*, No. 1:21-CV-00681, 2024 WL 2948646, at *8 (W.D. Tex. June 11, 2024) ("[C]ourts within the Fifth Circuit have held that boilerplate objections like Plaintiffs', virtually devoid of any law or analysis, should be overruled as a whole.") (collecting cases).

As for Plaintiffs' Rule 901 objection, after citing the rule about authenticity, Plaintiffs spend the next three or so pages arguing about the enforceability of unsigned agreements under Texas law.  (*See* Dkt. No. 113 at 3–6).  Only then do Plaintiffs briefly address the authenticity issue, stating that Uber's "reply references as proof of the signed agreement another objectionable and inadmissible document."  (*Id.* at 6) (citing Dkt. No. 86-8).

But the "objectionable and inadmissible document" (which the Court will address next) is not the only evidence supporting the authenticity of the technology services agreement.  Uber also offers the affidavit of a witness with knowledge of Uber's records that the technology services agreement is what it is claimed to be—exactly the type of evidence that satisfies the authentication requirement of Rule 901.  *See* Fed. R. Evid.

901(b)(1); (*see also* Dkt. No. 86-1 at 1, 6) (Affidavit of Erin O'Keefe).  The Court therefore overrules Plaintiffs' Rule 901 objection to the technology services agreement.

b. <u>Timestamp Log</u>

Plaintiffs next object to the admissibility of a timestamp log that Uber offers as proof of when Resendiz accepted the technology services agreement.  (*See* Dkt. No. 113 at 6) (objecting to Dkt. No. 86-8).  Plaintiffs claim that this document suffers from "the same admissibility problems" as the previous document.  (*Id.*).

Here again, other than incorporating by reference rules cited earlier, Plaintiffs do not explain how those rules apply to the document at issue.  Plaintiffs state only that "[t]here is no evidence relating to who, when, or how [the timestamp log] was created." (*Id.*).  That is not true.

Uber offers the affidavit of a witness with knowledge of Uber's records testifying that the timestamp log (1) meets the criteria for a business record, (2) is what it is claimed to be, and (3) is either an original or an exact duplicate.  (*See* Dkt. No. 86-1 at 1, 6); *see also* Fed. R. Evid. 901(b)(1), 1001(d), 1002.  The Court overrules Plaintiffs' objections to the admissibility of the timestamp log.

2. <u>**Objections Against Lyft**</u>

Plaintiffs object to Lyft's (1) 2016 terms of service, (Dkt. No. 109 at 23–42); (2) 2018 terms of service, (*id.* at 49–64); and (3) claims timestamp log of when Resendiz accepted these terms, (*id.* at 71–62).  (*See* Dkt. No. 121 at 14–17).  These are the same objections against essentially the same documents on the same grounds as those against Uber.  (*See*

8

Dkt. No. 121 at 14) (citing Fed. R. Evid. 802, 901, and 1002).  Therefore, the objections are overruled for the same reasons.

### B.    DEFENDANTS' MOTIONS TO STRIKE AND MOTIONS TO EXCLUDE

Defendants have also submitted various motions to strike and to exclude.  (Dkt. Nos. 107, 125, and 126).  Even without striking or excluding evidence, nothing in the record creates a genuine dispute of material fact as to Defendants' liability.  Accordingly, the Court denies these motions as moot.

## IV.    DISCUSSION

Defendants share one connection to the accident: the at-fault driver was logged in to and looking for passengers on Uber and Lyft's apps at the time of the accident.  Thus, under Chapter 2402 of the Texas Occupations Code, Resendiz was "an independent contractor for all purposes, and not an employee of the company in any manner" at the time of the accident.  Tex. Occ. Code § 2402.114.  Resendiz's independent-contractor status resolves most of Plaintiffs' vicarious- and direct-liability claims.  It resolves the former because the relationship between a company and its independent contractors is typically not "one implicating the [vicarious-liability] doctrine's risk-shifting policies." *Painter v. Amerimex Drilling I, Ltd.*, 561 S.W.3d 125, 131 (Tex. 2018).  And it resolves the latter because a company generally does not owe a duty to see that its independent contractors safely perform their work.  *JLB Builders, LLC v. Hernandez*, 622 S.W.3d 860, 864–65 (Tex. 2021).

### A.   CHAPTER 2402 OF THE TEXAS OCCUPATIONS CODE

The Court turns now to Chapter 2402.  In May 2017, Texas passed legislation governing rideshare companies like Uber and Lyft.  Tex. Occ. Code § 2402.001(5).  These provisions are found in Chapter 2402 of the Texas Occupations Code.

#### 1.   Transportation Network Companies

Chapter 2402 applies to "Transportation Network Companies," defined as entities that "enable a passenger to prearrange with a driver, exclusively through the entity's digital network, a digitally prearranged ride."  Tex. Occ. Code § 2402.001(5).  Section 2402.051 provides that an entity "may not operate a transportation network company" without "obtaining . . . a permit" and that the Texas Department of Licensing and Regulation "shall issue a permit to each applicant that meets the requirements of this chapter."  Tex. Occ. Code § 2402.051.

Uber and Lyft are both transportation network companies because they allow passengers to prearrange rides with drivers via a mobile app Rasier—a wholly owned subsidiary of Uber—has a permit to operate as a transportation network company, (Dkt. No. 86-3), as does Lyft, (Dkt. No. 109 at 9).

#### 2.   Driver-Screening Requirements

Next, the Code requires transportation network companies to verify certain information about drivers before allowing them onto the company's network.  Companies must confirm that a driver is at least 18 years old, has a valid driver's license, and has proof of registration.  Tex. Occ. Code § 2402.107(a)(1).  And companies must obtain and review (1) the driver's individual driving record and (2) a local, state, and

national criminal background check.  Tex. Occ. Code § 2402.107(a)(2).  A transportation network company cannot allow a driver onto its network if the driver has (1) "more than three" moving-violation offenses (e.g., traffic tickets), or (2) been "convicted" of any of several listed offenses.  Tex. Occ. Code § 2402.107(b).

Uber and Lyft complied with the driver-screening requirements.  Uber and Lyft confirmed that Resendiz (1) was at least 18 years old, (2) had a valid driver's license, and (3) had an unexpired registration sticker for his vehicle.  (Dkt. Nos. 86-4, 86-5, and 86-6) (Uber); (Dkt. No. 109 at 10–12) (Lyft).  Likewise, both Uber and Lyft reviewed Resendiz's driving record and conducted the required background checks.  (Dkt. No. 86-7) (Uber); (Dkt. No. 109 at 13–22) (Lyft).  These searches revealed a single speeding ticket and a dismissed misdemeanor charge for an offense not listed in Section 2402.107(b).  (Dkt. No. 86-7) (Uber); (Dkt. No. 109 at 13–22) (Lyft).  In other words, Resendiz's driving record did not show "more than three" moving violations, nor did the background checks reveal that he had been "convicted" of a disqualifying offense.  Tex. Occ. Code § 2402.107(b). Defendants met the driver-screening requirements.

### 3.    Section 2402.114's Independent-Contractor Requirements

Moving to the heart of the Chapter 2402 analysis: Section 2402.114.  Section 2402.114 defines the employment relationship between a transportation network company and the drivers on its network.  It states that a driver authorized to use a transportation network company's network is an "an independent contractor for all purposes, and not an employee of the company in any manner" if:

(1) the company does not:

    (A) prescribe the specific hours during which the driver is required to be logged in to the company's digital network;

    (B) impose restrictions on the driver's ability to use other transportation network companies' digital networks;

    (C) limit the territory within which the driver may provide digitally prearranged rides; or

    (D) restrict the driver from engaging in another occupation or business; and

(2) the company and the driver agree in writing that the driver is an independent contractor.

Tex. Occ. Code § 2402.114.

Applying Section 2402.114's five conditions to this case, Defendants must show that they *did not* (1) require Resendiz to work specific hours; (2) restrict his ability to use other rideshare companies' networks; (3) limit the territory in which he could provide rideshare services; or (4) prevent him from working other jobs. *See id.* § 2402.114(1). And Defendants must show that they *did* (5) agree with Resendiz in writing that he was an independent contractor. *See id.* § 2402.114(2).

        a.    <u>Defendants did not prescribe the specific hours during which Resendiz was required to be logged in.</u>

Plaintiffs claim that both Defendants "impose restrictions on the amount of hours a driver can work and set[] limitations on the amount of hours a driver can work per ride." (Dkt. No. 92 at 22) (Uber); (Dkt. No. 121 at 26) (Lyft). In other words, Defendants require drivers to be logged *out* of the companies' digital networks under certain circumstances. But that does not matter here. Section 2402 focuses on whether the

company "prescribe[s] the specific hours during which the driver is required to be logged *in* to the company's digital network."   Tex. Occ. Code. § 2402.114(1)(A) (emphasis added)).

In its Motion, Uber states that "Resendiz was free to work when he wanted, or not at all, and Defendants did not prescribe specific hours when he must be logged into the Driver App." (Dkt. No. 87 at 18).  Uber supports this statement with summary-judgment evidence.  (*See id.*) (citing Dkt. No. 86-1).  And even Plaintiffs admit that "Uber does not mandate its driver to work a specific shift." (Dkt. No. 92 at 22).

Lyft likewise states that it "did not require Resendiz to log into the Lyft platform during any specific hours." (Dkt. No. 108 at 11).  And it supports this statement with summary-judgment evidence.  (*See id.*) (citing Dkt. No. 109 at 5).  Plaintiffs admit that "Lyft does not mandate its driver to work a specific shift." (Dkt. No. 121 at 26).

In short, there is no dispute that Defendants did not prescribe the specific hours during which Resendiz had to be logged in to their networks.  *See* Tex. Occ. Code. § 2402.114(1)(A).  Resendiz was free to work whenever he wanted as long as he did not exceed certain thresholds.  As a result, Defendants have satisfied Section 2402.114(1)(A).

> b.   <u>Defendants did not restrict Resendiz's ability to use other rideshare companies' networks.</u>

Defendants did not restrict Resendiz's ability to use other rideshare companies' networks.  Tex. Occ. Code. § 2402.114(1)(B).  Plaintiffs do not dispute this fact.  (*See* Dkt. No. 92 at 16–17); (*see also* Dkt. No. 121 at 18).   Therefore, Defendants satisfied Section 2402.114(1)(B) as well.

        c.      <u>Defendants did not limit the territory within which Resendiz</u>
              <u>could provide digitally prearranged rides.</u>

Plaintiffs claim that Uber and Lyft drivers cannot complete rides outside of an assigned area.  (Dkt. No. 92 at 11–12); (Dkt. No. 121 at 10–11).  To support this claim, Plaintiffs rely entirely on affidavits from former rideshare drivers outside of Texas who state that they were either (1) "assigned" a geographic area; or (2) "forced to choose" a geographic area when they signed up to drive for Lyft or Uber.  (Dkt. No. 92 at 11–12); (Dkt. No. 121 at 10–11).

In response, Uber and Lyft state unequivocally—and support by affidavit—that they did not restrict the territory in which Resendiz could act as a rideshare driver:

> **Uber:** "[Uber and Rasier] did not limit the territory in which Resendiz could drive."

> **Lyft:** "Lyft did not . . . limit the territory in which Resendiz could provide rides.  Resendiz alone decided when to use the Lyft platform and in what locations."

(Dkt. No. 87 at 18) (citing Dkt. No. 86-1 at 3) (Uber); (Dkt. No. 108 at 11) (citation omitted) (citing Dkt. No. 109 at 5) (Lyft).

Importantly, Section 2402.114 is driver specific.  *See* Tex. Occ. Code § 2402.114(1) (authorizing "[a] driver" to use a rideshare company's network as an independent contractor if the company does not require "the driver" to work specific hours, restricts "the driver's" ability to use other rideshare companies' networks, limits the territory in which "the driver" may provide services, or prevents "the driver" from working another job).  So, Plaintiffs are required to show that Uber and Lyft "limit[ed] the territory within

which the driver"—that is, Resendiz—could "provide digitally prearranged rides." *Id.*
§ 2402.114(1)(C).

Rideshare companies are "regulated on the state and local level, with different
rules applying to [rideshare] drivers in different coverage areas." *Islam v. Lyft, Inc.*, 524
F.Supp.3d 338, 347 (S.D.N.Y. 2021).  Accordingly, evidence of how Defendants allegedly
regulate other drivers in different states is not evidence that Defendants restricted the
territory in which Resendiz provided rides in Texas.

Here, Plaintiffs have offered no evidence that either Defendant limited the
territory within which Resendiz could provide digitally prearranged rides.[4] *See* Tex. Occ.
Code § 2402.114(C).

> d.   Defendants did not restrict Resendiz from engaging in
> another occupation or business.

Plaintiffs do not dispute that Uber does not restrict Resendiz's ability to engage in
another occupation.  (*See* Dkt. No. 92 at 16–17).  But Plaintiffs contend that Lyft does.
(Dkt. No. 121 at 26).  That is because Lyft requires drivers to agree that they "will not,
while providing the Services, operate as a public or common carrier or taxi service [or]
accept street hails."  (Dkt. No. 109 at 54).

---

[4]   Plaintiffs offer two other theories on this issue: (1) Defendants use "pings" to
"direct[] . . . drivers to strategic locations" by showing them the areas in which there are more
potential passengers; and (2) Defendants allow—but do not require—drivers to use a limited
number of "destination filters" for their own benefit.  (Dkt. No. 92 at 11–12); (Dkt. No. 121 at 10–
11).  Both theories fail.  As discussed below, *see infra* Section V(B)(2)(b), a review of Plaintiffs'
evidence shows that drivers are free to ignore the location pings and continue offering services
in areas with fewer riders—at the risk of completing fewer rides.  (*See* Dkt. No. 92-5 at 65–68).
And the destination filters merely allow drivers to select *preferred* locations, (Dkt. No. 92 at 12);
(Dkt. No. 121 at 11), suggesting that the filters are only an optional perk.

Plaintiffs are incorrect.  Lyft's terms of service simply require drivers to comply with Chapter 2402, which (1) provides that transportation network companies are not common carriers or taxi services and (2) prevents rideshare drivers from accepting street hails while they are logged in as rideshare drivers.  *See* Tex. Occ. Code §§ 2402 .001(5)(A), .002, .004, .108.  Put simply, Lyft required Resendiz to agree that he would comply with Chapter 2402 while he was logged in as a rideshare driver.  When Resendiz was not logged in as a rideshare driver, he had "complete discretion" to "otherwise engage in other business or employment activities."  (Dkt. No. 109 at 63–64).

Accordingly, Plaintiffs have offered no evidence that either Defendant restricted Resendiz from engaging in another occupation or business.   *See* Tex. Occ. Code. § 2402.114(1)(D).

> e.   <u>Defendants and Resendiz agreed in writing that Resendiz was an independent contractor.</u>

Finally, Plaintiffs claim that Defendants and Resendiz did not "agree in writing" that Resendiz was an independent contractor as required by Section 2402.114(2).  (Dkt. No. 92 at 17–20); (Dkt. No. 121 at 18–21).  Plaintiffs argue that an electronic record is not "in writing" and that there is insufficient evidence that Resendiz accepted Defendants' terms of service.  (Dkt. No. 92 at 17–20); (Dkt. No. 121 at 18–21).  The Court disagrees.

Texas has adopted the Uniform Electronic Transactions Act, which provides that electronic signatures and records may be used in contract formation. Tex. Bus. & Com. Code § 322.009(a).  "If a law requires a record to be in writing, an electronic record satisfies the law."  *Id.* § 322.007(a).  Likewise: "If a law requires a signature, an electronic

signature satisfies the law." *Id.* § 322.007(d). "An electronic signature is attributable to a person if it was the act of the person," and "[t]he act of the person may be shown in any manner." *Id.* § 322.009.

When the evidence establishes that a user must accept a company's terms before using the company's services, courts applying Texas law have held that this is sufficient to prove acceptance. *See Hearn v. Uber Techs., Inc.*, No. 4:21-CV-03465, 2022 WL 20691054, at *2–4 (S.D. Tex. May 27, 2022) (discussing the issue at length) (citing *Aerotek, Inc. v. Boyd*, 624 S.W.3d 199, 201–03, 209–10 (Tex. 2021)); *Aerotek*, 624 S.W.3d at 206, 210 (holding that "business rules that require users to complete all steps in a program before moving on or completing it" were sufficient to "conclusively establish[]" acceptance).[5]

According to Plaintiffs' own expert report:

> When an individual creates a profile and to become an Uber or Lyft driver, they are subject to third-party contracting as well as the Technology Service Agreement. *This must be agreed to and acknowledged before the driver is ever able to use the Uber or Lyft app to accept and execute rides.* It also means that the moment Resendiz logged onto either app, he was subject to said agreement and terms.

---

[5]   *See also Johnson v. Sw. Recovery Servs. Inc.*, No. 3:22-CV-00242, 2023 WL 1944127, at *8 (N.D. Tex. Jan. 24, 2023) ("The evidence also shows that Plaintiff could not complete enrollment without assenting to the 2022 TOU Agreement by clicking the button on the webform."), *report and recommendation adopted*, 2023 WL 1879999 (N.D. Tex. Feb. 10, 2023); *In re Online Travel Co.*, 953 F.Supp.2d 713, 719 (N.D. Tex. 2013) (finding sufficient evidence that the plaintiffs manifested assent as "it was impossible to complete a transaction on the Travelocity website in the absence of affirmative assent to the User Agreement"); *May v. Expedia, Inc.*, No. 1:16-CV-01211, 2018 WL 4343445, at *3 (W.D. Tex. July 19, 2018), *report and recommendation adopted*, 2018 WL 4343427 (W.D. Tex. Aug. 27, 2018) (finding that the plaintiff was bound to company's terms where a website "required the user to click a 'Continue' button to complete the transaction, and directly above the 'Continue' button informed the user that '[b]y clicking 'Continue' you are agreeing to our Terms and Conditions and Privacy Policy'").

(Dkt. No. 92-4 at 3) (emphasis added).  Defendants offer additional testimony to the same effect. (Dkt. No. 109 at 4–5) (Affidavit of Paul McCachen) ("Resendiz could not have proceeded to access content on the Lyft App without first accepting Lyft's Terms of Service by clicking the 'I Agree' button beneath the full text of the Lyft Terms of Service."); (Dkt. No. 86-1 at 3) (Affidavit of Erin O'Keefe) ("[P]rior to gaining access to the Driver Version of the Uber App, drivers accept the Technology Services Agreement . . . .").

So even without the disputed timestamp-log evidence, the record shows that Resendiz had to accept Lyft's terms of service and Uber's technology services agreement before accessing their networks.  That is sufficient to "conclusively establish" acceptance. *Aerotek*, 624 S.W.3d at 210.  The timestamp logs are only more evidence of the same.  (*See* Dkt. No. 86-8) (Uber); (Dkt. No. 109 at 71–72) (Lyft).

Defendants' agreements with Resendiz provide that their relationship would be "solely that of independent contracting parties."  (Dkt. No. 86-2 at 14) (Uber); (Dkt. No. 109 at 63) (Lyft).   The agreements are in writing under the Uniform Electronic Transactions Act, and the evidence establishes acceptance.  Thus, there is no genuine dispute that Defendants and Resendiz agreed in writing that Resendiz was an independent contractor.  *See* Tex. Occ. Code § 2402.114(2).

\* \* \*

Defendants have met their burden of establishing that Resendiz was an independent contractor under Chapter 2402 (specifically, Section 2402.114).  With this status established, the Court turns to the merits of Plaintiffs' claims.

### B.   PLAINTIFFS' CLAIMS

The Parties had good reason to spend most of their briefing disputing Resendiz's independent contractor status under Section 2402.114 since it resolves most of Plaintiffs' claims.  "Because an independent contractor has sole control over the means and methods of the work to be accomplished . . . the individual or entity that hires the independent contractor is generally not vicariously liable for the tort or negligence of that person." *Baptist Mem'l Hosp. Sys. v. Sampson*, 969 S.W.2d 945, 947 (Tex. 1998).  Likewise, "[a]s a general rule, one who employs an independent contractor has no duty to ensure that the contractor safely performs its work."  *JLB Builders, LLC*, 622 S.W.3d at 864–65.

***Vicarious-liability claims.***   Because Resendiz was an independent contractor when he rear-ended Plaintiffs, three of Plaintiffs' four vicarious-liability claims fail outright.  Plaintiffs' theories of (1) respondeat superior of an employee, (2) borrowed employee, and (3) joint venture all require Resendiz to have a status other than that of "an independent contractor for all purposes."   And to the extent that Plaintiffs' fourth vicarious-liability theory (i.e., mission liability)[6] remains viable as applied to independent contractors, Plaintiffs have not raised a genuine dispute on either of the theory's two

---

[6]   Plaintiffs refer to this theory as "*Respondeat Superior* of a Non-Employee."  (Dkt. No. 67 at 7, 18).  As reflected in Section 10.10 of the *Texas Civil Pattern Jury Charges*, Texas courts have recognized a form of nonemployee vicarious liability sometimes referred to as "mission liability." *See* Comm. on Pattern Jury Charges, State Bar of Tex., *Texas Pattern Jury Charges: General Negligence, Intentional Personal Torts & Workers' Compensation* PJC 10.10 (2022); *see also Arvizu v. Estate of Pucket*, 364 S.W.3d 273, 276–77 (Tex. 2012) ("[N]onemployee mission liability is a form of 'respondeat superior liability outside the employment context' . . . ." (quoting *St. Joseph Hosp. v. Wolff*, 94 S.W.3d 513, 537 (Tex. 2002))).   But as explained below, *infra* Section V(B)(1)(b), the viability of this theory as applied to independent contractors is questionable in light of the vicarious-liability framework laid out in *Painter v. Amerimex Drilling I, Ltd.*, 561 S.W.3d 125 (Tex. 2018).

elements: (1) control and (2) benefit. *See Arvizu v. Estate of Pucket*, 364 S.W.3d 273, 276–77 (Tex. 2012).

**Direct-liability claims.** Resendiz's independent-contractor status also means that "[a]s a general rule," Defendants had no duty to ensure that Resendiz safely performed his work. *JLB Builders, LLC*, 622 S.W.3d at 864–65. And without duty, there is no direct liability. *See id.* at 864.

Even so, Texas courts continue to "recognize[] a cause of action for negligently hiring an independent contractor." *Freyer v. Lyft, Inc.*, 639 S.W.3d 772, 785 (Tex. App.—Dallas 2021, no pet.). Plaintiffs, however, offer no evidence raising a genuine issue of material fact as to negligent hiring.

Likewise, "an exception" to the general no-duty rule for those who hire independent contractors "arises when 'the employer retains some control over the manner in which the contractor performs the work that causes the damage.'" *JLB Builders, LLC*, 622 S.W.3d at 866 (quoting *AEP Tex. Cent. Co. v. Arredondo*, 612 S.W.3d 289, 295 (Tex. 2020)). But the control must relate to the condition or activity that caused the injury. *Id.* And the control must extend to the means, methods, and details of the activity. *Id.* Plaintiffs offer no evidence that Defendants actually exercised or had the right to exercise this sort of control over Resendiz at the time of the accident.

As for Plaintiffs' claims that Defendants' "policies create distracted drivers," (Dkt. No. 67 at 12), there is no evidence that Defendants contributed to the accident in any way that gives rise to liability under Texas law.

***Gross negligence.***  Finally, Plaintiffs claim that Defendants were grossly negligent. (Dkt. No. 67 at 14–15, 24–25).  But "one's conduct cannot be grossly negligent without being negligent." *First Assembly of God, Inc. v. Tex. Utils. Elec. Co.*, 52 S.W.3d 482, 494 (Tex. App.—Dallas 2001, no pet.).

### 1.   <u>Plaintiffs' Vicarious-Liability Claims</u>

Plaintiffs bring four vicarious-liability claims against Defendants: (1) respondeat superior of an employee; (2) respondeat superior of a nonemployee; (3) borrowed employee; and (4) joint venture.  (Dkt. No. 67 at 4–11) (asserting these claims against Uber); (*see also id.* at 15–22) (asserting the same claims against Lyft).

### a.   <u>Respondeat superior of an employee</u>

Plaintiffs' first claim is "Respondeat Superior of an Employee."  (*Id.* at 5–6, 16–17) (emphasis omitted).   "[P]roving an employer's vicarious liability for a worker's negligence involves a two-step process.  The plaintiff must show that, at the time of the negligent conduct, the worker (1) was an employee and (2) was acting in the course and scope of his employment."  *Painter v. Amerimex Drilling I, Ltd.*, 561 S.W.3d 125, 138 (Tex. 2018).

This claim fails because Defendants have satisfied the requirements of Section 2402.114.  Thus, Resendiz was "not an employee of the compan[ies] in any manner."  Tex. Occ. Code § 2402.114.

### b.   <u>Respondeat superior of a nonemployee</u>

Plaintiffs' next claim is "Respondeat Superior of a Non-employee."  (Dkt. No. 67 at 7–8, 18–19) (emphasis omitted).  Texas cases have recognized a form of respondeat

superior liability outside the employment context sometimes called "mission liability." *See Arvizu v. Estate of Pucket*, 364 S.W.3d 273, 276–77 (Tex. 2012) (citing *St. Joseph Hosp. v. Wolff*, 94 S.W.3d 513, 537 (Tex. 2002)); *see also St. Joseph Hosp.*, 94 S.W.3d 513 at 537 n.72 (first citing *English v. Dhane*, 294 S.W.2d 709, 711 (Tex. 1956); and then citing *Bertrand v. Mutual Motor Co.*, 38 S.W.2d 417, 418 (Tex. App.—Eastland 1931, writ ref'd)).   Mission liability requires proof that the specific mission was conducted: (1) subject to the defendant's control; and (2) for the defendant's benefit.   *See Arvizu*, 364 S.W.3d at 275 n.3.

The viability of the mission liability theory as applied to independent contractors is questionable after *Painter v. Amerimex Drilling I, Ltd.*, where the Supreme Court of Texas laid out the "General Framework" of the "common-law doctrine of respondeat superior, or vicarious liability."  561 S.W.3d at 130.  Instead of the mission liability theory, the *Painter* court suggested that the "more appropriate" analysis for assessing the task-specific liability of those who contract with independent contractors is found in cases like *Redinger v. Living, Inc.*, and *Fifth Club, Inc. v. Ramirez*.  *Id.* at 133 (citing *Redinger v. Living, Inc.*, 689 S.W.2d 415, 418 (Tex. 1985) and *Fifth Club, Inc. v. Ramirez*, 196 S.W.3d 788, 796 (Tex. 2006)).

In *Redinger*, the Supreme Court of Texas explained that one who retains supervisory control over an independent contractor "may be liable unless he exercises reasonable care in supervising the subcontractor's activity."  689 S.W.2d at 418.  But the failure to exercise reasonable care in the observance of one's own duties is the basis for direct, rather than vicarious, liability.  *See JLB Builders, LLC*, 622 S.W.3d at 865 (citing *Redinger* in the context of a direct-liability analysis).

And in *Fifth Club, Inc. v. Ramirez*, the Supreme Court of Texas actually addressed a mission liability claim against a company that hired an independent contractor (though without mentioning the theory by name).  196 S.W.3d at 791–92; *see also Ramirez v. Fifth Club, Inc.*, 144 S.W.3d 574, 588 (Tex. App.—Austin 2004) ("We hold that the record contains both legally and factually sufficient evidence that West was acting in the furtherance of a mission . . ."), *aff'd in part, rev'd in part* 196 S.W.3d 788 (Tex. 2006).  The *Fifth Club* court affirmed the rule that, "[g]enerally, an employer has no duty to ensure that an independent contractor performs its work in a safe manner."  196 S.W.3d at 791. And the court recognized the retained-control exception found in *Redinger*.  *See id.* at 791 (citing *Redinger*, 689 S.W.2d at 418).  But the court held that there was no vicarious liability because the company's control did "not rise to the level of directing how the work was to be performed."  *Id.* at 792.  Instead, the independent contractor retained the right to perform his work by "whatever method he chose."  *Id.* at 792.  Thus, the *Fifth Club* court overruled the lower court's finding of mission liability.  *See id.*

Though the *Fifth Club* court framed the retained-control theory as one of vicarious liability, the Supreme Court of Texas has since clarified that it is not.  *See JLB Builders, LLC*, at 864–68 (discussing the retained-control theory as one of direct liability and citing *Fifth Club* and *Redinger*).

In light of these cases, the retained-control theory is not an exception to the rule that an "individual or entity that hires the independent contractor is generally not vicariously liable for the tort or negligence of that person."  *Baptist Mem'l Hosp. Sys.*, 969 S.W.2d at 947.  Rather, it is an exception to the "general rule [that] one who employs an

independent contractor has no duty to ensure that the contractor safely performs its work." *JLB Builders, LLC*, 622 S.W.3d at 864–65.  In other words, the retained-control theory is a theory of direct liability, one premised on the defendant's negligent exercise of his retained control.  *See id.* at 865 (citing Restatement (Second) of Torts § 414 (1977)); *see also* Restatement (Second) of Torts § 414 (1977) ("Negligence in Exercising Control Retained by Employer").  Given that, the general rule of no vicarious liability applies and bars Plaintiffs' mission liability claim.

Even if mission liability were a viable claim, it would fail as to both Defendants. "The key elements of such a theory are (1) benefit to the defendant and (2) right of control." *Wolff*, 94 S.W.3d at 537.  At the time of the accident, Resendiz was looking for passengers on both Defendants' apps.  (Dkt. No. 67 at 3–4).  He was not following directions to a specific passenger's location, nor was he following specific directions to drop one off.  (*See id.*).  This also means that Resendiz was not earning Defendants any income at this point.  (*See* Dkt. No. 92 at 9–10) (Uber); (Dkt. No. 121 at 8–9) (Lyft).

So, even if Resendiz was "on a mission" for Defendants at the time of the accident, *Arvizu*, 364 S.W.3d at 276, he was not subject to their control or acting for their benefit "'at the very instant'" of the accident, *Omega Contracting, Inc. v. Torres*, 191 S.W.3d 828, 847 (Tex. App.—Fort Worth 2006, no pet.) (quoting *Am. Nat'l. Ins. v. Denke*, 95 S.W.2d 370, 373 (Tex. 1936)).[7]

---

[7]   The Court discusses the issue of control in further detail below in the context of Defendants' supervisory liability.  *See infra* Section V(B)(2)(b).  That discussion applies with equal force to the control element of Plaintiffs' mission liability claim.

In short, Plaintiffs' mission liability claim fails as a matter of law—either under the general rule of no vicarious liability for independent contractors or on its own terms.

### c.   Borrowed-Employee

Plaintiffs next claim that Resendiz was a "borrowed employee." (Dkt. No. 67 at 8–9, 19–20). Under this doctrine, the "employee of one employer may become the borrowed employee of another with respect to some activities." *St. Joseph Hosp.*, 94 S.W.3d at 537. "Whether this has in fact occurred hinges on whether the other employer or its agents have the right to direct and control the employee with respect to the details of the particular work at issue." *Id.*

The plain terms of Section 2402.114 preclude Plaintiffs' borrowed-employee theory. Section 2402.114 provides that if its conditions are satisfied, a driver is "an independent contractor *for all purposes*, and not an employee of the company *in any manner*." Tex. Occ. Code § 2402.114 (emphasis added). "[F]or all purposes" means that Resendiz was not an independent contractor for some purposes but a borrowed employee for others. And not in "any manner" includes not in a "borrowed" manner.

Moreover, for reasons discussed below, *infra* Section V(B)(2)(b), Defendants did not have control over Resendiz "with respect to the details of the particular work at issue." *St. Joseph Hosp.*, 94 S.W.3d at 537.

### d.   Joint Venture

Plaintiffs' last vicarious-liability claim is that Resendiz and Defendants were in a "joint venture." (Dkt. No. 67 at 10–11, 21–22). To prove such a claim, Plaintiffs must show there was (1) an express or implied agreement, (2) a common purpose, (3) a

community of pecuniary interest, and (4) an equal right to direct and control the enterprise. *Tex. Dep't of Transp. v. Able*, 35 S.W.3d 608, 613 (Tex. 2000). "A joint venture does not exist if any one of the four elements is missing." *Pitts & Collard, LLP v. Schechter*, 369 S.W.3d 301, 319 (Tex. App.—Houston [1st Dist.] 2011, no pet.).

Again, the plain terms of Section 2402.114 preclude Plaintiffs' theory. Resendiz was an independent contractor "for all purposes." Tex. Occ. Code § 2402.114. He was not an independent contractor for some purposes and a joint venturer for others. *Cf. Walker v. Messerschmitt Bolkow Blohm GmBH*, 844 F.2d 237, 242 (5th Cir. 1988) ("Because of the fundamental distinction between the two relationships as described above, we agree . . . that if Lone Star were North Central's independent contractor at the time of the accident, the jury was precluded from finding that the two entities were engaged in a joint enterprise."); *cf. also Blackburn v. Columbia Med. Ctr.*, 58 S.W.3d 263, 277 (Tex. App.—Fort Worth 2001, pet. denied) ("[T]he mere existence of an independent contractor/principal relationship generally preclude[s] the imposition of joint enterprise liability.").

Moreover, the terms of both Defendants' agreements disclaim any joint venture between Defendants and Resendiz. (Dkt. No. 86-2 at 14) (Uber) ("[N]o joint venture, partnership, or agency relationship exists between Company and you."); (Dkt. No. 109 at 63) (Lyft) ("[N]o joint venture, franchisor-franchisee, partnership, or agency relationship is intended or created by this Agreement."). And under Texas law, "partnership-disclaimer language expressly negates any intent on behalf of the parties to create a joint

venture or partnership." *Energy Transfer Partners, L.P. v. Enter. Prods. Partners, L.P.*, 593 S.W.3d 732, 739 (Tex. 2020).

### 2. Plaintiffs' Direct-Liability Claims

Next, direct liability.  Plaintiffs claim that Defendants are liable for, among other things, "negligently contracting, qualifying, monitoring, retaining, managing, and supervising" Resendiz.  (*Id.* at 11–15, 22–25).  Plaintiffs also claim that Uber and Lyft directly contributed to the accident by creating a distracting driving environment.  (*Id.* at 11–13).

### a.  Negligent hiring

"Texas recognizes a cause of action for negligently hiring an independent contractor." *Freyer*, 639 S.W.3d at 785.  "One hiring an independent contractor may be held responsible for the contractor's negligent acts if (1) the employer knew or should have known that the contractor was incompetent and (2) a third person was injured because of the contractor's incompetence."  *Id.*  "If the performance of the contract requires driving a vehicle, the person employing the independent contractor is required to investigate the independent contractor's competency to drive." *Id.* "If an inquiry was made by the employer, the question becomes whether the inquiry made was sufficient to constitute the exercise of due care." *Id.*

As their only evidence that Defendants failed to exercise due care in allowing Resendiz access to their networks, Plaintiffs point to Resendiz's "colorful past," (Dkt. No. 92 at 33)—that is, a single two-year-old speeding ticket and a dismissed misdemeanor charge.

In a nearly identical context, the Dallas Court of Appeals reviewed a past much more colorful than Resendiz's and concluded that "the trial court properly granted Lyft's no-evidence motion for summary judgment on [the plaintiff's] claim for negligent hiring of an independent contractor."  *Id.* at 789; *see also id.* at 785–87 (establishing that the driver in that case had two speeding citations, had been involved in two accidents, and had her license suspended multiple times).

The court added that "[c]ompliance with statutory standards is evidence of the use of reasonable care," even though it "is not necessarily dispositive of that issue."  *Id.* at 784.   Here, both Defendants complied with the driver-screening requirements of Section 2402.107, and these screenings did not show that Resendiz had "more than three" moving violations or that he had been "convicted" of a disqualifying offense.  Tex. Occ. Code § 2402.107.  As in *Freyer*, Plaintiffs have failed to raise a genuine issue of material fact on negligent hiring.

### b.   Supervisory liability

Most of Plaintiffs' remaining direct-liability claims fit into what the *Painter* court called "supervisory liability."  *Painter*, 561 S.W.3d at 133; (*see* Dkt. No. 67 at 11–14, 22–24). The court "recognized the potential for such supervisory liability where 'the employer retains some control over the manner in which the contractor performs the work that causes the damage.'"  *Painter*, 561 S.W.3d at 133 (quoting *Fifth Club, Inc.*, 196 S.W.3d at 791.  The court made clear that supervisory liability is a direct-liability theory: "[T]his [supervisory-liability] assessment must be conducted 'when the employer retains some control over the manner in which the independent contractor's work is performed, *but*

*does not retain the degree of control which would subject him to liability as a master*.'" *Id.* (emphasis added) (quoting *Redinger*, 689 S.W.2d at 418).

The Supreme Court of Texas recently discussed the principles governing supervisory-liability claims (also called *Redinger* claims or retained-control claims) in *JLB Builders, LLC v. Hernandez*.  The court explained that, "[w]hen analyzing a negligence claim, [courts] first ask whether the defendant owed the plaintiff a duty." *JLB Builders, LLC*, 622 S.W.3d at 864.  And "[a]s a general rule, one who employs an independent contractor has no duty to ensure that the contractor safely performs its work." *Id.* at 864–65.

"However, an exception to this rule arises when 'the employer retains some control over the manner in which the contractor performs the work that causes the damage.'" *Id.* at 865 (quoting *Fifth Club, Inc.*, 196 S.W.3d at 791).  "A plaintiff can prove the requisite control by establishing that the general contractor either actually controlled the manner in which the subcontractor performed its work or had a contractual right to do so." *Id.*  "In either case," though, "the 'control must relate to the condition or activity that caused the injury.'" *Id.* (quoting *Clayton W. Williams, Jr., Inc. v. Olivo*, 952 S.W.2d 523, 528 (Tex. 1997)).  "Further, the control retained or exercised by the general contractor must 'extend to the means, methods, or details of the independent contractor's work.'" *Id.* (cleaned up) (quoting *AEP Tex. Cent. Co.*, 612 S.W.3d at 295).

Here, the "condition or activity that caused the injury" was Resendiz driving his car while logged in to Defendants' apps looking for passengers.  As evidence of control at this time, Plaintiffs claim that Resendiz was driving as directed by Defendants to a

location where he would be eligible to accept or receive ride requests.  (Dkt. No. 92 at 21)
(Uber); (Dkt. No. 121 at 25) (Lyft).

The record does not bear that out.  In support of this claim, the only evidence that
Plaintiffs cite specific to Resendiz is the report and testimony of their retained expert,
Bradley Fields.  (*See* Dkt. No. 92 at 21) (first citing Dkt. No. 92-4 at 2; and then citing Dkt.
No. 92-5 at 68, 193–196); (*see also* Dkt. No. 121 at 25) (citing Dkt. No. 121-6 at 6; and then
citing Dkt. No. 121-7 at 68, 193–196).

> [I]n this case specifically, Resendiz was heading in a specific
> direction in order to receive ride requests. Uber and Lyft both
> regulate rides traffic by adjusting pings or ride requests based
> on the number of riders to drivers available in any given area.
> Because of this, Resendiz was being directed to a specific
> location in order to be eligible for a ride request much like an
> employee of a store being told what section or department to
> go work in.

(Dkt. No. 92-4 at 2).  But when asked to explain this statement in his deposition, Fields
*did not* state that Defendants were directing Resendiz to a specific location or requiring
him to follow a specific route.  (*See* Dkt. No. 92-5 at 65–68).  Instead, even accepting
Fields's testimony as true, it only establishes that: (1) Defendants' apps showed Resendiz
the areas where there were more potential passengers; and (2) because Defendants assign
ride requests based in large part on proximity, Resendiz would have "to drive that
direction in order to receive those—those ride requests."  (*See* Dkt. No. 92-5 at 65–68).

Nothing in Fields's testimony suggests that Resendiz was following a prescribed
route or even that Defendants required him to drive in the direction he was headed.  In

fact, Fields suggests the opposite at various points.  (*See* Dkt. No. 92-5 at 98) ("[W]hen an

Uber driver[] accept[s] a trip, Uber provides a specified route that they require *or*

*suggest*—strongly *suggest* that that driver takes." (emphasis added)); (Dkt. No. 121-8 at

104–05) (conceding that drivers are not penalized by Lyft "unless they had to cancel a

request").

   In the end, Plaintiffs' evidence of "control" at the time of the accident amounts to

this: If Resendiz wanted to make money as a rideshare driver, it was in his best interest

to be in an area with more potential passengers.   Defendants showed Resendiz

information about areas with more passengers, but they did not require him to follow a

specific route to those areas or even to go there at all.   Resendiz was free to offer his

services in an area with fewer potential riders—at the risk of completing fewer rides.   As

Fields summarizes it:

> So what I'm speaking to there is that once where you logged
> on it was in period one before he could accept a trip and move
> on to period two, he had to go to a location where there were
> enough active rider requests. You have to be in some kind of
> specific location or distance close enough to those
> requests. . . .
>
> So he can—he would have a view on his Uber app on his
> phone that would show obviously where he was, because it's
> a live GPS, and to some extent, he would be able to see
> potential or riders on the app as well nearby, right?
>
> So if he can see that, hey, I'm 15 minutes away from where I
> it looks like there's some riders, he would then have to drive
> that direction in order to receive those—those ride requests.

(Dkt. No. 92-5 at 65–66).

A general contractor does not control independent contractors by telling them where a job site is.  Resendiz "was driving as directed by [Defendants] to a location wherein he would be eligible to accept or receive ride requests," (Dkt. No. 92 at 21); (Dkt. No. 121 at 25), only in the sense that any independent contractor must drive to their work site to be eligible to get paid.

In sum, Defendants did not retain control over the "means, methods, or details" of the "activity that caused the injury" in a way that "cause[d] the damage" to Plaintiffs. *JLB Builders, LLC*, 622 S.W.3d at 865 (cleaned up).  Plaintiffs likewise point to nothing in Defendants' agreements suggesting Defendants had a "contractual right to do so."  *Id.*; (*cf.* Dkt. No. 86-2 at 4) (Uber) ("Company shall not, and has no right to, supervise, direct or control you generally or in your performance under this Agreement . . . ."); (Dkt. No. 109 at 41) ("Lyft does not . . . direct or control you generally or in your performance under this Agreement . . ."). Plaintiffs' supervisory liability claims therefore fail as a matter of law.

c.   <u>Distraction</u>

Plaintiffs' final direct-liability claim is that Defendants' "policies create distracted drivers." (Dkt. No. 67 at 11–12, 22–23).  This claim fails for four reasons.

First, the Texas Legislature authorized rideshare companies to operate platforms in Texas, knowing that offering rides requires the use of a cell phone.  Tex. Occ. Code § 2402.004.

Second, Section 545.4251 of the Texas Transportation Code expressly allows drivers to use a portable wireless communication device "that is permanently or

temporarily affixed to the vehicle to relay information in the course of the operator's occupational duties between the operator and . . . a digital network or software application service." *See* Tex. Trans. Code § 545.4251(b), (c)(2).  The legislature added this section in 2017, the same legislative session as Chapter 2402.  *See* Act of May 25, 2017, 85th Leg., H.B. 62, ch. 438, § 8, 2017 Tex. Sess. Law Serv. Ch. 438.

Third, Texas law permits the use of a mobile device while a vehicle is in motion if the device is being "to navigate using a global positioning system or navigation system." *See* Tex. Transp. Code § 545.4251(c).

Fourth, Plaintiffs offer no evidence that distraction played any role in the accident. (*See* Dkt. No. 113 at 13); (Dkt. No. 121 at 34); *see also Rattray v. City of Brownsville*, 662 S.W.3d 860, 874 (Tex. 2023) (holding that negligence requires "[c]ause in fact," which is only "established when the act or omission was a substantial factor in bringing about the injury and, without it, the harm would not have occurred" (citation omitted)).

### 3.   Plaintiffs' Gross-Negligence Claims

Finally, Plaintiffs claim that Defendants were grossly negligent.  (Dkt. No. 67 at 14–15, 24–25).  "[O]ne's conduct cannot be grossly negligent without being negligent." *First Assembly of God, Inc.*, 52 S.W.3d at 494.  Because the Court has held that Plaintiffs failed to create a genuine issue of material fact on their negligence claims, Plaintiffs have necessarily failed to create a fact issue on gross negligence.  For that reason, Plaintiffs' gross negligence claims fail as a matter of law.

**V.     CONCLUSION**[8]

Plaintiffs have failed to establish a genuine issue of material fact on any of their claims against Defendants.  Accordingly, Defendants Uber Technologies, Inc. and Rasier, LLC's Motion for Summary Judgment, (Dkt. No. 87), and Defendant Lyft, Inc.'s Motion for Summary Judgment, (Dkt. No. 108), are **GRANTED**.  Plaintiffs' Motion for Partial Summary Judgment, (DKT. No. 142), is **DENIED** as moot.

IT IS SO ORDERED.

Signed on September 26, 2024.

**DREW B. TIPTON**
**UNITED STATES DISTRICT JUDGE**

---

[8]     Given that Defendants are entitled to summary judgment on Plaintiffs' claims, Plaintiffs Motion for Partial Summary Judgment is moot.  Therefore, the Court need not rule on the subjects of Plaintiffs' Motion for Partial Summary Judgment: Defendants' alternative defenses of comparative fault and unavoidable accident.